**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

**ANTHONY T. VACCARO,**

    **Plaintiff,**

**v.**

**FREEDOM MORTGAGE CORPORATION
and NATIONSTAR MORTGAGE LLC d/b/a
MR. COOPER,**

    **Defendant.**

_____/

**CASE:**

**CLASS ACTION COMPLAINT**

**JURY DEMAND**

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, Anthony T. Vaccaro, individually and on behalf of all others similarly situated, hereby files his Class Action Complaint for violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et., and the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereafter, the "FCCPA") against the Defendant, Freedom Mortgage Corporation, (hereafter Freedom Mortgage) and Defendant, Nationstar Mortgage LLC d/b/a Mr. Cooper (hereinafter Nationstar Mortgage), and allege:

### INTRODUCTION

Time and time again, Plaintiff was told by his mortgage servicers that he was in a forbearance when in reality they were actively prosecuting a foreclosure action against him.

1

## JURISDICTION

1.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA), and the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.* (TILA).

2.    This Court has supplemental jurisdiction to hear any state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

3.    The Court has personal jurisdiction over Defendants because they conduct substantial business in this District, and this lawsuit arises out of acts that occurred in this District.

4.    Venue is proper in accordance with 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and the property is located in this judicial district.

## PARTIES

### *Plaintiff Anthony Vaccaro*

5.    Plaintiff is the owner of residential real property, located at and commonly known as 4036 Red Pine Lane, St. Augustine Florida (the "Home").

6.    Plaintiff currently maintains the Home as his primary, principal residence, and have so maintained the Home for all times relevant to the allegations of the Complaint.

7.    At all material times herein, Plaintiff was a natural person who resided in St. Johns County, Florida and is a "consumer" as that term is defined by Florida Statute Section 559.55(8)  and a person as defined by the RESPA at 12 U.S.C. § 2602(5).

### *Defendant Freedom Mortgage*

8.    Defendant Freedom Mortgage Corporation ("Defendant" or "Freedom") is a foreign corporation incorporated under the laws of the State of New Jersey that maintains its  headquarters and principal place of business at 951 Yamato Rd., Ste. 175, Boca Raton, FL 44431.

9.     Freedom is the servicer of a note executed by Plaintiff (the "Note") and of a mortgage on the Home that secures the Note (the "Mortgage") (collectively, the "Loan").

10.    The Loan is a "federally related mortgage loan" as defined by RESPA and Regulation X. 12 U.S.C. § 2602(1); 12 C.F.R. § 1024.2(b).

11.    Freedom is a mortgage "servicer" as defined by RESPA and Regulation X. 12 U.S.C.  § 2605(i)(2); 12 C.F.R. § 1024.2(b).

12.    At all relevant times, Defendant Freedom Mortgage is and was subject to the Real Estate Settlement Procedures Act, 12 U.S.C. 2601 et. seq., ("RESPA"), at all times relevant to this transaction.

13.    At all relevant times, Defendant Freedom Mortgage is and was a "**Person**" within the meaning of the RESPA, 12 U.S.C. § 2602(5).

14.    At all relevant times, Defendant Freedom Mortgage was engaged in "**Servicing**" within the meaning of the RESPA, 12 U.S.C. § 2605(i)(3).

15.    At all material times herein, Defendant Freedom Mortgage attempted to collect a debt, specifically for a mortgage on Plaintiff's home at 4036 Red Pine Lane, St. Augustine, Florida ("the Debt").

16.    At all material times herein, Defendant Freedom Mortgage was a "person" subject to Florida Statutes, Section 559.72. See Florida Statutes, Sections 559.55(5),(7); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

17.    At all material times herein, Defendant Freedom Mortgage conduct, with respect to the Debt complained of below, qualifies as "communication" as defined by Florida Statutes, Section 559.44(2).

18.    At all material times herein, Defendant Freedom Mortgage acts itself or through its agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third party vendors and insurers.

### Defendant Nationstar Mortgage i.e. "Mr. Cooper"

19.    Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Defendant" or "Nationstar") is a foreign limited liability company incorporated under the laws of

4

the State of Delaware that maintains its headquarters and principal place of business at 8950 Cypress Waters Blvd., Dallas, TX 75019.

20.     Nationstar is the servicer of a note executed by Plaintiff (the "Note") and of a mortgage on the Home that secures the Note (the "Mortgage") (collectively, the "Loan").

21.     The Loan is a "**federally related mortgage loan**" as defined by RESPA and Regulation X. 12 U.S.C. § 2602(1); 12 C.F.R. § 1024.2(b).

22.     Nationstar is a mortgage "**servicer**" as defined by RESPA and Regulation X. 12 U.S.C.  § 2605(i)(2); 12 C.F.R. § 1024.2(b).

23.     At all relevant times, Nationstar Mortgage is and was subject to the Real Estate Settlement Procedures Act, 12 U.S.C. 2601 et. seq., ("RESPA"), at all times relevant to this transaction.

24.     At all relevant times, Defendant Nationstar Mortgage is and was a "**person**" within the meaning of the RESPA, 12 U.S.C. § 2602(5).

25.     At all relevant times, Defendant Nationstar Mortgage was engaged in "**servicing**" within the meaning of the RESPA, 12 U.S.C. § 2605(i)(3).

26.     At all material times herein, Defendant Nationstar Mortgage attempted to collect a debt, specifically for a mortgage on Plaintiff's home at 4036 Red Pine Lane, St. Augustine, Florida ("the Debt").

27.    At all material times herein, Defendant Nationstar Mortgage was a "person" subject to Florida Statutes, Section 559.72. See Florida Statutes, Sections 559.55(5),(7); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

28.    At all material times herein, Defendant Nationstar Mortgage conduct, with respect to the Debt complained of below, qualifies as "communication" as defined by Florida Statutes, Section 559.44(2).

29.    At all material times herein, Defendant Nationstar Mortgage acts itself or through its agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third party vendors and insurers.

30.    All necessary conditions precedent to the filing of this action occurred or have been waived by the Defendant.

## **RELEVANT FACTS**

31.    On November 17, 2016, Plaintiff executed a promissory note and a mortgage (the Debt or Loan) to Defendant Freedom Mortgage for his home at 4036 Red Pine Lane, St. Augustine Florida. ***See Exhibit A.***

32.    Plaintiff fell upon financial hardship and defaulted on his obligations pursuant to Plaintiff's Loan.

33.    Plaintiff, like millions of others, were impacted by COVID-19.

34.    Plaintiff was in forbearance pursuant to the CARES Act from March 1, 2020

through December 31, 2021.  *See Exhibit B.*

## First Foreclosure Filed

35.    On March 10, 2020, Freedom Mortgage filed a mortgage foreclosure action

against Plaintiff in St. Johns County Circuit Court (Case Number No. CA20-307)

and alleged that Plaintiff owed $131,606.03 and that Plaintiff failed to pay the

payment due September 1, 2019 and all subsequent payments. *See Exhibit C,*

*Court Docket.*

36.    Plaintiff was not served with the foreclosure complaint until December 14, 2020.

*See Exhibit C.*

## Defendant Freedom Mortgage tells Plaintiff he is not in Foreclosure but in Forbearance

37.    However, after Plaintiff was served with the foreclosure complaint he received a

letter sent by Freedom Mortgage on December 16, 2020, stating that his Covid 19

Forbearance Plan was extended until March 31, 2021.  *See Exhibit D - Covid-19*

*Forbearance Plan Extension Notice*.

38.    Upon receiving the foreclosure complaint, Plaintiff immediately contacted

Freedom Mortgage to find out the status of his mortgage loan.    Its agents

repeatedly explained and insisted that he was **not in foreclosure** because he was

in a forbearance. Plaintiff was understandably anxious after receiving the

foreclosure complaint but Freedom Mortgage was adamant that the loan was in

forbearance. Defendant even provided him their attorney's phone number for him

to verify that he was not in foreclosure. Plaintiff left multiple messages for their attorney and never received a response.

39.   Due to the constant assurance from Freedom Mortgage that he was <u>not</u> in foreclosure, Plaintiff did not respond to the foreclosure complaint.  Accordingly, a default judgment was entered against Plaintiff on February 11, 2021 in the foreclosure case. ***See Exhibit E, Default Judgment.***

40.   On April 13, 2021, Defendant Freedom Mortgage filed a Motion for Continuance in the foreclosure action stating that Plaintiff was approved for a COVID-19 Forbearance through June 30, 2021 and that in addition, Defendant placed the file on a temporary hold through June 30, 2021 pursuant to Mortgagee Letter 2020-04 issued on March 1, 2020 by the US Department of Housing and Urban Development. ***See Exhibit F.***

41.   On June 10, 2021, Defendant Freedom Mortgage sent Plaintiff a Covid-19 Forbearance Plan Extension Notice extending the forbearance plan through September 30, 2021.  ***See Exhibit G, Covid-19 Forbearance Plan Extension Notice***.

42.   Nevertheless, Defendant Freedom Mortgage moved for a Final Judgment of Foreclosure which was entered on November 3, 2021 and a judgment for $154,770.55 was entered against Plaintiff. A sale date for Plaintiff's home was scheduled for March 24, 2022 at 12:00pm. ***See Exhibit C.***

43.   On November 30, 2021, Defendant Freedom Mortgage stated that Plaintiff was approved for a Covid-19 Recovery Modification and had until December 12, 2021 to respond.  See *Exhibit H, Modification Approval Letter.*

44.   On February 3, 2022, Defendant Freedom Mortgage sent Plaintiff a letter stating that his mortgage loan was transferred to Defendant Nationstar d/b/a Mr. Cooper effective January 4, 2022.  It stated that his next billing statement would come from Defendant Nationstar. *See Exhibit I – Welcome letter.*

<u>Plaintiff Executes Loan Modification</u>

45.   On January 25, 2022, Plaintiff executed a Loan Modification Agreement with a new principal amount of $119,935.82 and total capitalized amount of $21,231.30 along with a subordinate mortgage of $32,901.51 which brought the **total to: $174,068.63**.  The new Maturity Date was January 1, 2052. The fixed interest rate was 3.125.  The new monthly payment was $513.78 plus escrow of $392.00 and was to begin on February 1, 2022. *See Exhibit J.*

46.   The Loan Modification would not go into effect unless and until the (1) Lender approved this Agreement and (2) the Modification Effective Date occurred. *See Exhibit J, paragraph #2(D).*

47.   On January 25, 2022, by executing the Loan Modification, Plaintiff submitted a complete or, alternatively, facially complete Loss Mitigation Application. This was 58 days before the original scheduled foreclosure sale on March 24, 2022 at 12:00pm, or well within the 37-day 12 CFR §1024.41(g) protection period for Plaintiff.

48.    On February 24, 2022, Defendant Freedom filed a Notice of Foreclosure sale in the foreclosure case, indicating movement forward with the sale. This was filed within the 37-day protection period for Plaintiff during the time when "[the] servicer shall not move for foreclosure judgment or order of sale,  or conduct a foreclosure sale." ***See Exhibit C.***

### Loan Servicing Transferred to Nationstar Mortgage

49.    In late January 2022, Plaintiff called Freedom Mortgage regarding the first payment on the modification which was due February 1, 2022. Freedom Mortgage informed him that his loan had been sold to Nationstar Mortgage d/b/a Mr. Cooper.  Freedom Mortgage assured Plaintiff that Nationstar Mortgage would honor the loan modification and there was a 60 day grace period with the new lender.  He asked again about the foreclosure and they again reassured him that he was <u>not</u> in foreclosure and that he was in forbearance.

50.    Accordingly, Plaintiff then called Nationstar Mortgage to make sure his mortgage modification in place. To Plaintiff's great surprise and dismay, Nationstar informs him that they have no record of the loan modification, and they could not accept a payment from him. Eventually, Nationstar Mortgage stated they will send him a mailing slip for Plaintiff to send them the modification he received from Freedom Mortgage.

51.    At this time, Plaintiff provides Nationstar Mortgage his banking information for the modification payments for February 2021 and March 2021. Nationstar

Mortgage never processed or applied the payments. Plaintiff continued to call Nationstar Mortgage daily to follow up on the modification.

52.   Plaintiff did not receive the mailing slip for the modification from Nationstar Mortgage until March 2021 and Nationstar Mortgage does not receive the modification until March 17, 2021.

53.   On January 25, 2022, Defendant Nationstar Mortgage sent Plaintiff a letter stating that his forbearance had expired. ***See Exhibit K.***

54.   On March 4, 2022, Defendant files a Motion to Cancel Foreclosure Sale and stated that it was currently evaluating Plaintiff's eligibility to participate in a loan modification, bizarrely ignoring the fact that Plaintiff had already executed a loan modification on January 25, 2022. ***See Exhibit C.***

55.   Eventually at 7pm on March 23, 2022, the day before his home is set for auction, Nationstar Mortgage informed Plaintiff that it would **<u>not</u>** honor the loan modification.

### Chapter 13 Bankruptcy

56.   In order to save his home from sale, Plaintiff was forced to file a Chapter 13 bankruptcy on March 24, 2022 at 10:16 AM (case number: 3:22-bk-00609) just an hour and forty-four minutes before the auction started. ***See Exhibit L, Bankruptcy Docket.***

57.   Inexplicably, the day after the auction date, March 25, 2022, Nationstar Mortgage told Plaintiff that it would now honor the loan modification.

58.    Nationstar Mortgage executes the Loan Modification on March 30, 2022. *See Loan Modification, Exhibit J.*

59.    However, Plaintiff had spent all of his savings on the last-minute Chapter 13 to save the home and no longer had any money left to make the initial modification payments.

60.    On April 11, 2022, Defendant filed a Motion to Vacate Final Judgment of Mortgage Foreclosure and Dismiss Action without Prejudice and stated that after entry of the Final Judgment, that Plaintiff entered into a loan modification and the Final Judgment was no longer equitable. *See Exhibit C.*

61.    Plaintiff's Chapter 13 Bankruptcy was dismissed on April 22, 2022.

62.    The foreclosure case was dismissed, and the final judgment set aside on May 20, 2022.

63.    On June 10, 2022, Plaintiff called Freedom Mortgage and asks about his loan status and he was told he is still in loss mitigation.

<u>**Second Foreclosure**</u>

64.    On August 11, 2022, a second mortgage foreclosure action was filed against Mr. Vaccaro and stated that he had defaulted on the Loan Modification by failing to make the February 1, 2022 payment and all subsequent payments.[1]

65.    Mr. Vaccaro was served with the new foreclosure action on August 23, 2022 filed by Lakeview Loan Servicing.  Lakeview is subserviced by Defendant Nationstar

---

[1] The 2nd foreclosure complaint omits the fact that Nationstar did not execute the loan modification until March 30, 2022 and refused to take Plaintiff's payments in in February 2022.

Mortgage. This Complaint stated that he had defaulted on the February 01, 2022 payment and that he owed $119,935.82 from January 1, 2022 and references the April 13, 2022 loan modification.

66. On September 7, 2022, Lakeview Loan Servicing (subserviced by Nationstar Mortgage) dismissed the foreclosure before Plaintiff was ever served.

67. As a result of Defendant's actions, Plaintiff was damaged in the following ways, including but not limited to: increased arrearages on the Mortgage Loan, capitalized costs, loss of equity, improperly charged late fees, improperly charged escrow shortages, the costs and attorney fees associated with bringing this lawsuit, the costs and attorney fees associated with defending the improper foreclosure action, increased interest on principal, and an adverse credit-score rating.

68. As a result of Defendant's actions, Plaintiff suffered severe emotional distress, including depression, anxiety, stress, embarrassment, increased blood pressure, and sleepless nights.

**The Consumer Financial Protection Bureau's Official Interpretation of Regulation X §1024.41**

69. Mortgage Servicers under RESPA must abide by Regulation X, 12 CFR §1024.21 *et seq.*. Among the provisions in Reg. X is §1024.41(g) which states:

(g) Prohibition on foreclosure sale. If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless:
(1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the

appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;

(2) The borrower rejects all loss mitigation options offered by the servicer; **or**

(3) The borrower fails to perform under an agreement on a loss mitigation option.

70.    The Consumer Financial Protection Bureau ("CFPB") states the following in its

official interpretation on the 41(g) prohibition:

**1. Dispositive motion.** The prohibition on a servicer moving for judgment or order of sale includes making a dispositive motion for foreclosure judgment, such as a motion for default judgment, judgment on the pleadings, or summary judgment, which may directly result in a judgment of foreclosure or order of sale. A servicer that has made any such motion before receiving a complete loss mitigation application has not moved for a foreclosure judgment or order of sale if the servicer takes reasonable steps to avoid a ruling on such motion or issuance of such order prior to completing the procedures required by § 1024.41, notwithstanding whether any such action successfully avoids a ruling on a dispositive motion or issuance of an order of sale.

**2. Proceeding with the foreclosure process.** Nothing in § 1024.41(g) prevents a servicer from proceeding with the foreclosure process, including any publication, arbitration, or mediation requirements established by applicable law, when the first notice or filing for a foreclosure proceeding occurred before a servicer receives a complete loss mitigation application so long as any such steps in the foreclosure process do not cause or directly result in the issuance of a foreclosure judgment or order of sale, or the conduct of a foreclosure sale, in violation of § 1024.41.

**3. Interaction with foreclosure counsel.** The prohibitions in § 1024.41(g) against moving for judgment or order of sale or conducting a sale may require a servicer to act through foreclosure counsel retained by the servicer in a foreclosure proceeding. If a servicer has received a complete loss mitigation application, the servicer must instruct counsel promptly not to make a dispositive motion for foreclosure judgment or order of sale; where such a dispositive motion is pending, to avoid a ruling on the motion or issuance of an order of sale; and, where a sale is scheduled, to prevent conduct of a foreclosure sale, unless one of the conditions in § 1024.41(g)(1) through (3) is met. A servicer is not relieved of its obligations because foreclosure counsel's actions or inaction caused a violation.

**4. Loss mitigation applications submitted 37 days or less before foreclosure sale.** Although a servicer is not required to comply with the requirements in §

1024.41 with respect to a loss mitigation application submitted 37 days or less before a foreclosure sale, a servicer is required separately, in accordance with policies and procedures maintained pursuant to § 1024.38(b)(2)(v) to properly evaluate a borrower who submits an application for a loss mitigation option for all loss mitigation options available to the borrower pursuant to any requirements established by the owner or assignee of the borrower's mortgage loan. Such evaluation may be subject to requirements applicable to a review of a loss mitigation application submitted by a borrower 37 days or less before a foreclosure sale.

**5. Conducting a sale prohibited.** Section 1024.41(g) prohibits a servicer from conducting a foreclosure sale, even if a person other than the servicer administers or conducts the foreclosure sale proceedings. Where a foreclosure sale is scheduled, and none of the conditions under § 1024.41(g)(1) through (3) are applicable, conduct of the sale violates § 1024.41(g).

71. If a mortgage servicer violates 41(g), it is subject to liability under the RESPA as a whole. The CFPB's official interpretation guides how the mortgage servicer will violate 41(g). Whether the prohibited act happens due to the foreclosure counsel's actions or inactions is irrelevant, according to the Bureau.

## COUNT I:
## REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA)
## (as to FREEDOM MORTGAGE)

72. The Plaintiff incorporates paragraphs 1 through 71 in this Complaint by reference as though fully written here.

73. Defendant Freedom Mortgage is and was subject to the Real Estate Settlement Procedures Act, 12 U.S.C. 2601 et. seq., ("RESPA"), at all times relevant to this transaction.

74. At all times relevant to this transaction, Defendant is and was a "**Person**" as defined by the RESPA at 12 U.S.C. § 2602(5).

75.    At all times relevant to this transaction, Plaintiff is and was a "**Person**" as defined by the RESPA at 12 U.S.C. § 2602(5).

76.    At all times relevant to this transaction, Defendant is and was a "**Servicer**" as defined by Regulation X ("Reg. X") at 12 C.F.R. § 1024.2.

77.    The Mortgage Loan is a "**Federally Related Mortgage Loan**" as defined by the RESPA at 12 U.S.C. § 2602(1), and Reg. X at 12 C.F.R. § 1024.2.

78.    Defendant's actions discussed in this Complaint violate Reg. X at 12 C.F.R. § 1024.41 et seq.

79.    On multiple occasions, Defendant knew or should have known that the Plaintiff's Loss Mitigation Application was complete or facially complete under 12 C.F.R. § 1024.41(c)(2)(iv).

80.    On March 10, 2020, Defendant Freedom filed its Foreclosure against Plaintiff and following the filing, Plaintiff submitted a complete Loss Mitigation Application.

81.    On January 25, 2022, Plaintiff submitted a complete or, alternatively, facially complete Loss Mitigation Application. This was 58 days before the original scheduled foreclosure sale on March 24, 2022 at 12:00pm, or well within the 37-day 12 CFR §1024.41(g) protection period for Plaintiff.

82.    On February 24, 2022, Defendant Freedom filed a Notice of Foreclosure sale in the foreclosure case, indicating movement forward with the sale. This was filed within the 37-day protection period for Plaintiff during the time when "[the] servicer shall not move for foreclosure judgment or order of sale,  or conduct a foreclosure sale."

83.    Defendant filed a Notice of Foreclosure Sale against Plaintiff after his Loss

Mitigation Application was submitted in violation of 12 C.F.R. § 1024.41(g).

84.    Defendant's following actions constitute violations of the RESPA, including but

not limited to:

   a.  Failing to stay the foreclosure case apart from what was necessary under

       state and federal law;

   b.  Failing to dismiss the foreclosure case upon receipt of the submitted

       modification application; and

   c.  Filing a Notice of Foreclosure Sale, setting a sale date, more than 37 days

       prior to the date, but after the modification application was submitted.

85.    The Plaintiff has suffered emotional distress as a result of Defendant's actions.

86.    The Plaintiff has experienced extreme stress, sleepless nights, loss of appetite,

increased blood pressure, and nausea as a result of Defendant's actions.

87.    As a result of Defendant failing to properly evaluate the Plaintiff's complete or

facially complete Loss Mitigation Applications, the Plaintiff was subject to ever

increasing arrears, which improperly inflated the alleged amount owed on their

account and which will be included in any potential loan modification.

88.    As a result of Defendant's actions, the Plaintiff incurred legal expenses assessed

by Defendant Freedom Mortgage to file and prosecute the improper foreclosure

case.

89.    As a result of Defendant's actions, the Plaintiff was forced to incur the legal fees

and expenses of initiating the present lawsuit.

90.    Defendant is liable to the Plaintiff under this Count for each of its RESPA

violations in an amount equal to or greater than: the Plaintiff's actual damages,

statutory damages in the amount of $2,000, and including costs and attorney fees

pursuant to 12 U.S.C. § 2605(f)(1).

**WHEREFORE**, Plaintiff respectfully prays that this Court:

a.  Assume jurisdiction of this case;

b.  Award the Plaintiff  maximum damages under each Count, including the

maximum statutory damages available, the maximum economic and non-

economic damages available, including actual, emotional, general, punitive,

and other damages;

c.  Award the Plaintiff actual damages to be established at trial under Count

One of the Complaint including pursuant to 12 U.S.C. § 2605(f);

d.  Award the Plaintiff statutory damages in the amount of at least $2,000, plus

attorney fees, and costs of the action, under Count One of the Complaint

including pursuant to 12 U.S.C. § 2605(f)(2);

e.  Award the Plaintiff additional damages and costs;

f.  Award such other relief as the court deems appropriate.

<u>**COUNT II:**</u>
<u>**REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA)**</u>
<u>**(as to FREEDOM MORTGAGE)**</u>
<u>**CLASS CLAIM**</u>

91.    The Plaintiff incorporates paragraphs 1 through 71 in this Complaint by reference

as though fully written here.

92.   Defendant Freedom Mortgage is and was subject to the Real Estate Settlement Procedures Act, 12 U.S.C. 2601 et. seq., ("RESPA"), at all times relevant to this transaction.

93.   At all times relevant to this transaction, Defendant is and was a "**Person**" as defined by the RESPA at 12 U.S.C. § 2602(5).

94.   At all times relevant to this transaction, Plaintiff is and was a "**Person**" as defined by the RESPA at 12 U.S.C. § 2602(5).

95.   At all times relevant to this transaction, Defendant is and was a "**Servicer**" as defined by Regulation X ("Reg. X") at 12 C.F.R. § 1024.2.

96.   The Mortgage Loan is a "**Federally Related Mortgage Loan**" as defined by the RESPA at 12 U.S.C. § 2602(1), and Reg. X at 12 C.F.R. § 1024.2.

## CLASS ALLEGATIONS FOR COUNT II

97.   Upon information and belief, Freedom Mortgage engages in a policy and practice of violating RESPA at 12 CFR § 1024.41(g) by continuing the foreclosure process after a loss mitigation application was submitted from consumers.

98.   Specifically, Freedom Mortgage moves forward with a foreclosure sale, whether filing a Notice of Sale, Motion for Sale, or similar document, after a complete loss mitigation application is submitted by consumers.

99.   Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of himself and all others similarly situated.

100.  The Class Definition:

**41(g) Class:** All consumers in the United States with (a) Federally-Related Mortgage Loan serviced by Defendant where (b) Defendant had filed a foreclosure suit on that mortgage loan, (c) consumer had submitted a mortgage loan modification application following the filing of the foreclosure suit, and (d) Defendant moved forward in foreclosure litigation (e) at least 37-days prior to a foreclosure sale, in violation of 12 CFR § 1024.41(g).

101.    The Class Period begins three years prior to the filing of the original Complaint in this matter and ends when this Court issues an Order approving Class Notice.

102.    Plaintiff is unable to state the exact number of members of the Plaintiff Class because that information is solely in the possession of Defendant. However, the exact number of class members, including the names and addresses of all class members, will be easily ascertained through a review of Defendant's business records and bankruptcy court records. The putative Class exceeds several thousand consumers due to the volume of its business and mortgage servicing. Freedom Mortgage is a national mortgage servicing company and it applies the same policies in connection with servicing of loans in foreclosure.  Therefore, the putative Class is so numerous that joinder of all members would be impracticable.

103.    Questions of law and fact common to the Plaintiff Class exist and predominate over questions affecting only individual members, specifically,

a.    Whether Defendant filing or moving forward in foreclosure litigation against a consumer would violate the RESPA following the consumer's submission of a loan modification application.

104.    The claims asserted by the named Plaintiff in this action are typical of the claims of the members of the Plaintiff Class because, upon information and belief,

Defendant uses the same policies when in foreclosure litigation. The claims of the Plaintiff and of the Plaintiff Class originate from the same conduct, practice, and procedure, on the part of Defendant. Plaintiff possesses the same interests and has suffered the same injuries as each Class member. There are no individual facts which distinguish the Plaintiff from other Class members.

105.   The named Plaintiff will fairly and adequately represent and protect the interest of the members of the Plaintiff Class because he has no interest antagonistic to the Class he seeks to represent, and because the adjudication of his claims will necessarily decide the identical issues for other class members. Whether the Defendant's communications with Plaintiff violate the RESPA is an issue that will be decided for all other consumers with similar or identical letters or acts.  There is nothing peculiar about the Plaintiff's situation that would make him inadequate as Class Representative. Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation.

106.   A class action is superior to other methods for the fair and efficient adjudication of this controversy because the damages suffered by each individual Class member will be relatively modest, compared to the expense and burden of individual litigation.  It would be impracticable for each Class member to seek redress individually for the wrongful conduct alleged herein because the cost of such individual litigation would be cost prohibitive as individual statutory damages for each violation are capped at $2,000.00.  It would be difficult, if not impossible, to obtain counsel to represent Plaintiff on an individual basis for such small claims.

More importantly, the vast majority of Class members are not aware that the policy used by Defendant violate the RESPA and a class action is the only viable means of adjudicating their individual rights. There will be no difficulty in the management of this litigation as a class action as the legal issues affect a standardized pattern of conduct by Defendant and class actions are commonly used in such circumstances.

107. Defendant also acted and refused to act on grounds generally applicable to the Class, thereby making appropriate declaratory relief and corresponding final injunctive relief with respect to the Class as a whole. Defendant should be enjoined from "dual tracking" foreclosure cases where the consumer has submitted a loan modification application.

108. Defendant's actions discussed in this Complaint violate Reg. X at 12 C.F.R. § 1024.41 et seq.

109. On multiple occasions, Defendant knew or should have known that the Plaintiff's and the Class Members' Loss Mitigation Application was complete or facially complete under 12 C.F.R. § 1024.41(c)(2)(iv).

110. Defendant filed a Notice of Foreclosure Sale against Plaintiff after his Loss Mitigation Application was submitted in violation of 12 C.F.R. § 1024.41(g). Defendant acted the same or in a similar manner with the Class Members.

111. Defendant's following actions constitute violations of the RESPA, including but not limited to:

    a.  Failing to stay the foreclosure case apart from what was necessary under state and federal law; and

    b.  Failing to dismiss the foreclosure case upon receipt of the submitted modification application.

112.   As a result of these violations, the Plaintiff and Class Members have been harmed and are entitled to the statutory damages in the amount of $2,000, and costs and attorney fees including pursuant to 12 U.S.C. § 2605(f)(1).

**WHEREFORE**, Plaintiff respectfully prays that this Court:

    a.  Assume jurisdiction of this case;

    b.  Order Plaintiff as class representative and the undersigned as class counsel;

    c.  Certify, after motion, this RESPA Class;

    d.  Award the Plaintiff and Class Members maximum damages under each Count, including the maximum statutory damages available, the maximum economic and non-economic damages available, including actual, emotional, general, punitive, and other damages;

    e.  Award the Plaintiff and Class Members statutory damages in the amount of at least $2,000, plus attorney fees, and costs of the action, under this Count of the Complaint including pursuant to 12 U.S.C. § 2605(f)(2);

    f.  Award the Plaintiff additional damages and costs;

    g.  Award such other relief as the court deems appropriate.

**COUNT III:**
**VIOLATIONS OF THE FLORIDA CONSUMER COLLECTION**
**PRACTICES ACT Section 559.55 et seq., Fla. Stat.**
**(as to NATIONSTAR)**

113.   Plaintiff re-alleges and incorporates Paragraphs 1 through 71 above as if fully stated herein.

114.   On August 11, 2022, a second mortgage foreclosure action was filed against Mr. Vaccaro and stated that he had defaulted on the Loan Modification by failing to make the February 1, 2022 payment and all subsequent payments.

115.   However, Plaintiff had previously provided Nationstar/Mr. Cooper his bank account information and executed the modification for the loan prior to February 1, 2022. The Defendant failed to execute the modification, starting the payment schedule, until March 30, 2022.

116.   It was simply lethargy on the part of Nationstar that caused the eventual foreclosure action against Plaintiff.

117.   Defendant Nationstar violated the provisions of Florida Statutes Section 559.72(9) by attempting to collect the debt with knowledge that the Debt is not legitimate or asserting the existence of the legal right with the knowledge that the right does not exist.

118.   Specifically, Nationstar, at the time of threatening foreclosure, *had in its possession* the modification agreement with two distinctly different execution dates. Plaintiff could not have paid the February 2022 payment without Nationstar agreeing to the terms of the modification.

119.    Defendant possessed actual knowledge of Plaintiff's modification and its own actions and yet, demanded that Plaintiff pay over and above what he was required to do so, including late fees and other purposeless charges.

120.    By continuing to contact Plaintiff for a debt that he does not owe, the Defendant is, was subject to, and has violated provisions of Fla. Stat. §559.72:

   a.   "…or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family." Fla. Stat. §559.72(7); and

   b.   "Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. §559.72(9).

121.    Defendant's illegal and abusive collection communications and activities as more fully described above were the direct and proximate cause of emotional distress on the part of Plaintiff and caused him unnecessary personal strain in his relationships, as well as with other family members.

122.    Plaintiff has suffered actual damages because of these illegal collection communications and activities by the Defendant in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy.

123.   As a result of Defendant's violations of the FCCPA, Plaintiff is entitled to actual damages and statutory damages in an amount up to $1,000.00 and reasonable attorney's fees and costs pursuant to Section 559.77 from Defendant.

124.   Additionally, due to Defendant's disregard for the law, Plaintiff reserves his right to pursue punitive damages and/or equitable relief via Fla. Stat. § 559.77(2).

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendant Nationstar:

- for an award of actual damages pursuant to Section 559.77 against Defendant and for Plaintiff;
- for an award of statutory damages of $1,000.00 per claim pursuant to Section 559.77 against Defendant and for Plaintiff;
- for an award of costs of litigation and reasonable attorney's fees pursuant to Section 559.77 against Defendant and for Plaintiff; and
- for such other relief as this Court deems just and proper.

### **COUNT IV:**
### **VIOLATIONS OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT Section 559.55 et seq., Fla. Stat.**
### **(V. FREEDOM MORTGAGE)**

125.   Plaintiff re-alleges and incorporates Paragraphs 1 through 71 above as if fully stated herein.

126.   Defendant Freedom Mortgage violated the provisions of Florida Statutes Section 559.72(7) by "willfully engag[ing] in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family."

127.   Defendant Freedom Mortgage was active in the foreclosure case against Plaintiff

and, despite this, refused to admit that Plaintiff was in foreclosure, but only forbearance over the course of several months. This confusion and negligence harassed Plaintiff Vaccaro who was caught in a Catch-22 caused by Defendant's inability to keep records.

128.    By causing such confusion and harassment in communication about the collection actions, the Defendant is, was subject to, and has violated provisions of Fla. Stat. §559.72: "…or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family." Fla. Stat. §559.72(7).

129.    Defendant's illegal and abusive collection communications and activities as more fully described above were the direct and proximate cause of emotional distress on the part of Plaintiff and caused him unnecessary personal strain in his relationships, as well as with other family members.

130.    Plaintiff has suffered actual damages because of these illegal collection communications and activities by the Defendant in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy.

131.    As a result of Defendant's violations of the FCCPA, Plaintiff is entitled to actual damages and statutory damages in an amount up to $1,000.00 and reasonable attorney's fees and costs pursuant to Section 559.77 from Defendant.

132.    Additionally, due to Defendant's disregard for the law, Plaintiff reserves his right to pursue punitive damages and/or equitable relief via Fla. Stat. § 559.77(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendant Freedom:

- for an award of actual damages pursuant to Section 559.77 against Defendant and for Plaintiff;
- for an award of statutory damages of $1,000.00 per claim pursuant to Section 559.77 against Defendant and for Plaintiff;
- for an award of costs of litigation and reasonable attorney's fees pursuant to Section 559.77 against Defendant and for Plaintiff; and
- for such other relief as this Court deems just and proper.

## COUNT V:
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## (V. NATIONSTAR)

133.    Plaintiff re-alleges and incorporates Paragraphs 1 through 71 above as if fully stated herein.

134.    Nationstar/Mr. Cooper received the Plaintiff's mortgage loan while it was *in default* but not delinquent, due to the forbearance, thus subjecting the Defendant to the FDCPA as a debt collector pursuant to 15 U.S.C. §1692a(6).

135.    Defendant did not execute and therefore begin *enforcing* the Plaintiff's loan modification until March 30, 2022. Despite this, Nationstar moved forward with attempting to collect on a payment that Plaintiff did not owe from February 2022.

136.    Defendant Nationstar had knowledge of the modification and the status of

payments from the Plaintiff and despite this, still attempted to collect a payment which Plaintiff did not owe (the "Debt").

137.    Defendant violated the provisions of, the FDCPA, 15 USC §1692e(2)(A) "[t]he false representation of the character, amount, or legal status of any debt" and 15 USC §1692d "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

138.    Defendant's illegal and abusive collection communications and activities as more fully described above were the direct and proximate cause of emotional distress on the part of Plaintiff and caused him unnecessary personal strain in his relationships, as well as with other family members.

139.    Plaintiff has suffered actual damages because of these illegal collection communications and activities by the Defendant in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy.

140.    As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages and statutory damages in an amount up to $1,000.00 and reasonable attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendant Nationstar:

- for an award of actual damages pursuant to 15 USC §1692k against Defendant and for Plaintiff;

- for an award of statutory damages of $1,000.00 per claim pursuant to 15 USC §1692k against Defendant and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to Section 15 USC §1692k against Defendant and for Plaintiff; and

- for such other relief as this Court deems just and proper.

## **TRIAL BY JURY**

Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.

## **SPOILATION NOTICE AND DEMAND TO RETAIN EVIDENCE**

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence – paper, electronic documents, or date – pertaining to this litigation as required by law.

Dated this February 8, 2023.

**STORY | GRIFFIN**

/s/ Max Story_____
MAX STORY, ESQ.
Florida Bar No.:  527238
AUSTIN J. GRIFFIN, ESQ.
Florida Bar No.: 117740
328 2nd Avenue North, Suite 100
Jacksonville Beach, FL  32250
Telephone: (904) 372-4109
max@storylawgroup.com
austin@storylawgroup.com
Attorneys for Plaintiff